[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name was Cathy Klopfenstein, and the defendant were married at Brookfield, Connecticut, on December 8, 1984. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date of the filing of the complaint. The plaintiff and the defendant have no minor children issue of the marriage. No minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance. The court finds the following additional facts. CT Page 6529
The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation.
The parties are in dispute as to the cause of the breakdown of the marriage. The court finds that each party is equally at fault for the cause of the breakdown.
Prior to the commencement of the hearing on the limited contested dissolution, the plaintiff had her maiden name restored by the Probate Court. The plaintiff was married before her marriage to the defendant. She has three adult children from her first marriage ages 25, 22 and 19. The 19 year old child still resides with the plaintiff. The plaintiff is 50 years old. The plaintiff has a master's degree.
The plaintiff suffers from hypertension. She has asthma. She also has acute bronchitis. She also has scoliosis. Her health insurance is through the defendant's State of Connecticut health plan.
The plaintiff is presently unemployed. She worked during the marriage. When the parties met in 1984, the defendant was employed as a maintenance engineer for an automobile dealer. He informed her when they met that he had been employed as a Connecticut State Trooper for twelve years and had been injured on the job.
The monthly cost for COBRA benefits for the plaintiff under the defendant's retirement is $197.88 for Blue Cross State Preferred, plus $14.63 for Blue Cross Dental.
The plaintiff has been receiving unemployment compensation since November 21, 1995. The plaintiff has been unemployed since November 21, 1995. She has received unemployment compensation which ended as of March 14, 1997. The child support that she receives is as a result of the youngest child from her first marriage.
Under the terms of her first dissolution, she is under a New York court order to pay one-half her youngest son's college expenses.
The plaintiff receives child support from her first husband in the amount of $110 weekly. The plaintiff's liabilities consist CT Page 6530 of two general categories, personal liabilities and liabilities arising out of guarantees of business loans. The following is a list of personal liabilities that are joint with the defendant:
Creditor Balance Due
Visa $2,013.28
Mastercard $1,575.68
Fleet 24 $3,561.85
Shell $ 82.14
Texaco $ 303.57
Leahy's Fuel $ 563.00
Silva Associates $ 107.27
Radio Shack $ 434.65
The plaintiff also has the following personal debts that are not joint with the defendant:
Creditor Balance Due
A. Discover $2,163.40
B. Attorney Marquis 1,502.52
C. Dr. A. Borelli $ 243.00
D. Ralph Welsh, Ph.D. $ 150.00
(This debt was incurred for the plaintiff's son.)
E. Real property taxes $2,444.02
F. Property tax $ 155.44
G. Motor vehicle tax $ 115.43
H. Brookfield Family Medical $ 239.00 CT Page 6531
(The debt to Dr. Welsh was incurred for the plaintiff's son.)
I. Corning Clinical Lab $ 156.00
(This debt was incurred for the plaintiff.)
The following is a list of personal guarantees by the plaintiff for business loans regarding Engineering Techniques, Inc.:
Creditor Amount
I.R.S. 941 taxes from business $63,335.98
Ford Motor Credit $4,539.54
(This was for a van owned by the corporation. It has since been repossessed. The plaintiff cosigned on the note and the defendant did not.)
Ford Motor Credit $2,519.44
(This was a debt guaranteed by the plaintiff but not by the defendant.)
Chase Automotive $10,563.69
(This was for a van owned by Engineering Techniques, Inc. The defendant did not sign for this loan. This loan is a separate loan from the Chase Credit Loan shown on the defendant's financial affidavit in the approximate balance of $8500.)
American Honda Finance $2,255.35
(This was an Acura motor vehicle primarily used by the plaintiff and leased by Engineering Techniques, Inc. in 1993. The defendant did not cosign this loan.)
GE Capital $2,975.46
(This was for a van owned by Engineering Techniques, Inc. The defendant did not cosign this loan.)
First Union $54,233.39 CT Page 6532
(This was for a line of credit that may or may not have been cosigned by the plaintiff.)
The plaintiff owns a brooch that is not on any of the lists submitted that has a fair market value of approximately $1000. That item is awarded to the plaintiff. She also owns a diamond engagement ring that is not on any list with a fair market value of $1200 that was owned by her prior to her marriage to the defendant.
When the parties married, the plaintiff owned a furnished home. The fair market value of the home was between $125,000 and $150,000. There was a mortgage on the home with an approximate balance of $38,000. She also owned a 1991 Mazda free and clear. She had Paine-Weber stock with a value of approximately $4000, and an I.R.A. with a value of approximately $2000.
The plaintiff sold her home in July of 1986, and netted between $110,000 and $115,000. That money was used to purchase the home presently owned. The parties purchased their present home on July 1, 1986 for $250,000.
The mortgage that was used toward the purchase price of the family home was cosigned by both the plaintiff and the defendant. In the fall of 1986, the parties rebuilt the family home. The plaintiff acted as the general contractor and did the design work and hiring of subcontractors. The defendant did the heating and the air conditioning, electrical and plumbing work. The parties also started to renovate a cottage that is located on the family home in the fall of 1986. That work has not been completed. They also did some renovations on an outbuilding that have not been completed. The family home is presently on the market for sale.
The family home presently has a first mortgage and a second mortgage. The first mortgage is presently under foreclosure that commenced in September or October of 1996. The second mortgage is also under foreclosure.
The family home located at 51 and 53 Old Bridge Road, Brookfield, Connecticut, has a fair market value of $315,000. It has a first mortgage of $144,449 and a second mortgage of $133,488. The defendant quitclaimed his interest in the home to the plaintiff in 1993 because of the concern for lawsuits that could be filed against him arising out of his criminal conviction. CT Page 6533
When the parties met in 1984, the plaintiff held a salaried position earning $25,000 annually.
In September of 1985, she was dismissed from the employment position that she had held since September of 1984. Her dismissal was as a result of mistakes that she was making at the office which were in part due to fellow employees gossiping behind her back regarding her marriage to the defendant.
The plaintiff has been actively seeking employment for a managerial job in advertising and/or marketing. She has not received any job offers.
The defendant has one prior marriage. He has two adult children from that marriage ages 26 and 23. The defendant is 54 years old. The defendant has a high school degree and has taken some professional courses through the Air Force.
The defendant has attention deficit disorder and dementia.
The defendant has an Agent Orange claim against the United States Government.
The defendant was born on May 2, 1941. He received his GED while in the Armed Forces between 1966 and 1971, part of which time he served with the Air Force in Vietnam. He was employed by the Connecticut State Police for eleven and one-half years. He was injured in the course of his employment on or about 1997. He was unable to work for approximately two years following his injury. He then worked at a desk job. After terminating his employment with the state police, he was employed at a car dealership doing maintenance and construction projects where he worked for less than one year. He was employed at the car dealership at the time he met the plaintiff. He had terminated his employment with the state police in about 1982. During the period of time he was incarcerated, the plaintiff received his disability checks.
The injuries he received while a state police officer were incurred when he was struck broadside by an automobile and included hip injuries, injuries to his spine and nerve damage. He has a 15 percent disability resulting from his spine injury. He suffers from depression at the present time. CT Page 6534
On the day prior to their marriage, the defendant informed the plaintiff that he would be prosecuted by the State of Connecticut for a risk of injury charge with a ten year sentence hanging over his head. In early 1995, the defendant entered an Alford plea and received an eighteen month sentence to commence in March of 1985.
The plaintiff petitioned for the defendant's early release and obtained an excess of one hundred signatures in support of that petition.
The defendant owes the I.R.S. $2930 arising from his individual 1995 income tax return.
One of his liabilities is to the state police credit union with a loan balance of approximately $2000. That was taken out to purchase a computer for the plaintiff's son Kenneth.
The defendant lives in a one bedroom condominium. His monthly rent is $775 plus utilities.
The defendant owes $3100 to the State Police Credit Union that was used for paying attorney's fees. He also owes $3600 to Attorney Smart who was the first attorney who represented him in the pending dissolution matter. He has paid that attorney an excess of $1000. The $3600 that the defendant shows as a liability to Fleet Bank is the same liability shown on the plaintiff's financial affidavit in the amount of $3561. The actual balance due on that liability as of January 17, 1997 is $3442.53. He also has a liability to the Danbury Hospital in the amount of $5200. The liability shown by the defendant to the I.R.S., in the amount of $2930, is reflected on plaintiff's exhibit 43 as part of a notice of levy by the I.R.S. in the amount of $2930.86. There is statutory interest on that debt bringing the balance to $3104.53 as of November 22, 1996. The I.R.S. levy is for a second liability totalling $63,254.94. That is a liability arising out of Engineering Techniques, Inc.
The defendant has assets that include miscellaneous personal property and an I.B.M. Aptiva computer, with a total value of $5000. He purchased the computer in October or November of 1995, shortly after he vacated the family residence.
When the parties married, the defendant had an interest in a home from his prior marriage. Sometime between 1987 and 1989, he CT Page 6535 received approximately $60,000 for the interest in that home.
When the parties married, the defendant also owned an automobile as well as his personal possessions.
The defendant receives retirement benefits from the State of Connecticut. He is allowed to earn $20,900 annually without affecting his retirement benefits.
The defendant has a pension plan with the State of Connecticut in which he has a gross monthly retirement allowance of $1281.86, plus a supplemental disability compensation of $1173.17 monthly. He has a deduction of $9 weekly for health insurance and $67 weekly for taxes, leaving a net weekly sum from the State of Connecticut of $494.73. Once the dissolution is granted, his monthly retirement allowance will be $1307.52, plus his supplemental disability compensation monthly allowance of $873.17.
The defendant is presently employed as a sales dispatcher. His gross weekly income is $387.50 and his net weekly income is $310.83.
An order was entered, coded 123, allowing the defendant to remove certain items of equipment, supplies, inventory and furnishings owned by Engineering Techniques, Inc. from the family home. He was to provide the plaintiff with a list of all items removed prior to their removal and was to designate his opinion of the approximate value of each such item. He has never provided the plaintiff with the list of items he removed or of their value.
The following is a list of items at the marital residence, some of which are in dispute, and some of which are not in dispute:
1. Two deep freeze units. The plaintiff may retain one of the units and the defendant one unit. The plaintiff will have her choice of units.
2. Three queen size mattresses. The plaintiff will have her choice of two queen size mattresses with box springs, the remaining one is awarded to the defendant.
3. Bedding, sheets, etc. These items are divided equally CT Page 6536 between the parties.
4. Four night stands. These items are divided equally between the parties. The plaintiff has her choice of the two she wants.
5. Numerous bedroom lamps. These are to be divided equally. The plaintiff may pick the one-half she wants.
6. Two bureaus with mirrors. One bureau with mirror is awarded to the plaintiff of her choice. The second one is awarded to the defendant.
7. Three boys bedroom sets — there is only one. These items are awarded to the plaintiff.
8. Black TV stand and oak TV/stereo stand. The oak TV/stereo stand is awarded to the defendant. The black TV stand is awarded to the plaintiff.
9. The five piece sofa bed recliner is awarded to the defendant.
10. Three piece glass table set (1 coffee, 2 ends). These items are awarded to the plaintiff.
11. One standing mirror. This item is awarded to the plaintiff.
13. Free-standing glass shelving. This item is awarded to the plaintiff.
14. All glass large dining room set. This item is awarded to the plaintiff.
15. Crystal glass and china set service. These items are awarded to the plaintiff.
16. 1000 watt microwave oven. This item is awarded to the defendant.
17. Kitchen table with four rocker chairs. These items are awarded to the plaintiff.
18. One each mixer, blender (food processor), toaster, 2 fryers, 1 wok. These items are awarded to the defendant. CT Page 6537
19. AC/DC color 13" TV VCR combo. These items are awarded to the plaintiff.
20. Under-counter AM/FM radio. This item is awarded to the defendant.
21. Full size refrigerator without a freezer. This item is awarded to the plaintiff.
22. Two Electrolux vacuums. These items are to be split equally, with the plaintiff picking the one she wants.
23. Kurtzweil Electronic Keyboard. This item is awarded to the plaintiff.
24. Yamaha or Casio small keyboard w/stand. These items are awarded to the defendant.
25. Full size treadmill. This item is awarded to the defendant.
26. 15" color TV with VCR combo. These items are awarded to the plaintiff.
28. Numerous Christian book library is awarded to the defendant. Any items in this category that are referred to in exhibit 55 are to be disposed of in accordance with that exhibit.
29. Numerous Christian cassettes and musicals. Plaintiff has submitted an exhibit 55 itemizing the complete set of cassettes and musicals and how they should be divided up. The court approves of that list and orders them divided in accordance with that list.
32. 1976 Ford mini motor home is awarded to the defendant.
35. Bedroom TV VCR stand cabinet. See item 26.
36. Weather station on roof is awarded to the defendant.
38. Large vice is awarded to the defendant.
40. Many two line telephones are divided between the parties. The plaintiff is to have her choice of the one-half she wishes to CT Page 6538 retain.
43. Fireplace insert is awarded to the defendant.
45. Apple MAC large computer. This is probably a 6118CD. It is awarded to the defendant.
48. Two weight-lifting sets. One set is awarded to the defendant. The plaintiff is to select the set she is to receive.
49. Small lawn mower. This item is awarded to the defendant.
50. Small rototiller. This item is awarded to the defendant
51. Weedwacker. This item is awarded to the defendant.
52. Backpack blower. This item is awarded to the defendant:
53. PC attic air conditioning unit. This item is awarded to the defendant.
54. Two-part expensive sewing machine seamer system. These items are awarded to the plaintiff.
55. Four-part stereo system in attic is awarded to the defendant.
59. Thirty-gallon fish tank aquarium system and stand. These items are awarded to the plaintiff.
60. Large figure nativity scene and stable. These items are awarded to the defendant.
61. A set of Lenox — the Christ series. This item is awarded to the defendant.
62. Dual cassette player. This item is awarded to the plaintiff.
63. Laser disk player is awarded to the defendant.
The following is a list of assets owned by the business to be disposed of in accordance with orders hereinafter entered:
No. 27 — two Tandy computers — one printer and two color monitors CT Page 6539
No. 30 — three drawing tables
No. 31 — copier and fax
No. 33 — Honda generator
No. 34 — Kubota lawn tractor w/mower, plow and loader
No. 37 — drill press
No. 39 — free-standing bench grinder
No. 41 — safe
No. 42 — three computer desks
No. 44 — laser printer
No. 46 — many software systems
No. 47 — MAC computer w/no printer
No. 56 — five high comfort office chairs
No. 57 — unit commercial telephone system
No. 58 — four office desk lights
The following assets, if located, were owned by Engineering Techniques, Inc. to also be disposed of in accordance with orders hereinafter entered:
1. Cutter
2. Small power tools
3. Sheet metal ducts
4. Miscellaneous parts
5. Gauger
6. Generator CT Page 6540
7. Vacuum pump
The I.R.S. has liened all the items shown on plaintiff's exhibit 33, as well as remaining business items at the family residence.
In addition, an Eric trailer is owned by the business.
The following items on plaintiff's exhibit 50 under the general category of "items on not above list" are awarded to the defendant.
1. Military clothing, gear, decorations, pictures. This is awarded to the defendant.
2. T's camping gear, survival equipment, fowl weather. This is awarded to the defendant.
3. Model trains and accessories. This is awarded to the defendant.
4. Storage locker. This is awarded to the defendant.
5. Photo lenses, camera and bag. This is awarded to the defendant.
6. MPG electronic meter kit. This is awarded to the defendant if it can be located.
7. Harmin Kardin amp and equalizer. Item 7 is listed as a Harmin Kardin. It is actually a Kenwood. The amp equalizer and tape deck are all awarded to the defendant. The plaintiff does not know where the turntable is. All of the speakers are also awarded to the defendant.
8. Sears Craftsman radial arm saw. This item is awarded to the defendant if it can be located.
9. Small wood burning stove. This item is awarded to the defendant.
10. Vietnam VC captured rife and sword. These items are awarded to the defendant if they can be located.
11. Photos. These items are awarded to the defendant. CT Page 6541
12. CDs and tapes, records. The court has previously disposed of these items.
13. Tan recliner. This item goes to the defendant.
14. Scouting and Indian headdress. These items go to the defendant.
15. U.S. treasury $10 certificate goes to the defendant if it can be located.
16. Cramp vibrator. This item is awarded to the defendant.
20. Personal files. These items are awarded to the defendant if they can be located.
21. Tax returns 1984 to 1994. These items are awarded to the defendant if they can be located.
24. Ice maker in cellar. This item is awarded to the defendant.
26. Large folding table unit w/four chairs. These items are awarded to the defendant if they can be located.
27. Franklin Bible Computer. This item is awarded to the defendant.
28. Strongs Bible Concordance. This item is awarded to the plaintiff if the defendant is able to locate it.
29. 27" TV, VCR, oak entertainment unit. These items are awarded to the defendant. He already has these items.
All of the miscellaneous items on defendant's exhibit 6 are awarded to the defendant consisting of items 1 through 9.
Engineering Techniques, Inc. was incorporated during the time the defendant was incarcerated.
The parties jointly agreed to work together in starting the business of Engineering Techniques, Inc. with the plaintiff working for that business for approximately three years and then going back to her field of marketing and advertising. CT Page 6542
The plaintiff worked for Engineering Techniques, Inc. from July of 1985 until November of 1995.
All the corporate assets are owned and/or liened by the I.R.S.
The corporation started to run into financial problems at the end of 1980 when the construction market was flat. At the end of 1994, it had two large contracts, one for $40,000 and the other for $75,000 for which it was not paid. Attempts to sell the business failed. The parties took out a second mortgage on the family residence in the face amount of $113,000 and used the money for the corporation. Most of the work performed by the corporation ended in 1995. By December of 1995, all activity for the corporation had ended. The parties are in dispute as to who is responsible for the financial situation of the corporation. The court finds that each party is equally responsible for the financial situation of the corporation. For the fiscal year ending June 30, 1992, the corporation had gross receipts of $351,669. It had a taxable income loss of $13,225. Compensation paid to officers amounted to $47,000. For the fiscal year ending June 30, 1993, the corporation had gross receipts of $307,442. It had a taxable loss of $38,224. Compensation paid to officers amounted to $56,480. For the fiscal year ending June 30, 1994, the corporation had gross receipts of $527,592. It had a taxable loss of $104,208. The salaries paid to officers amounted to $59,585. For the fiscal year ending June 30, 1995, the corporation had gross receipts of $653,323. It had a taxable loss of $40,356. Compensation to officers amounted to $55,385.
The parties were equally involved in the running of Engineering Techniques, Inc.
At one point in time, the corporation had nine to ten employees. The defendant acted as the engineer, designer and salesman. The plaintiff was the president of the corporation.
The court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81 (c) regarding the issues of property division, and has considered the provisions of § 46b-62
regarding the issues of attorney's fees. The court enters the following orders: CT Page 6543
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
2. The defendant is to provide COBRA benefits for the plaintiff under the defendant's retirement for the maximum period allowed by law for his Blue Cross and Blue Cross Dental Plan. The parties are to divide equally the cost of such coverage.
C. BY WAY OF PROPERTY ORDERS
1. The parties have submitted to the court an agreement, dated March 11, 1997, signed by counsel for the plaintiff and counsel for the defendant regarding the disposition of personal property owned by the corporation. All of the provisions of that agreement are approved and orders are entered in accordance with that agreement. The court orders that the Kubota tractor be sold at the earliest possible date.
2. The defendant's Agent Orange claim is awarded solely to the defendant.
3. Plaintiff's exhibit 54 provides for two methods by which an exspouse may receive a portion of the other spouse's State Employees Retirement System Benefits. The court awards the plaintiff 25 percent of the defendant's income from the State Employees Retirement System. The 25 percent includes the supplemental disability compensation payable to the defendant. The court retains jurisdiction over any disputes regarding the language necessary to accomplish this order.
4. Each party is to pay one-half of the personal creditor liabilities shown on the plaintiff's financial affidavit, dated February 13, 1997, and hold the other party harmless with such one-half consisting of VISA, Mastercard, Fleet 24, Shell, Texaco, Leahy's Fuel, Silva Associates and Radio Shack. It is the intent of this order that no third party beneficiary rights be created from this order. The remaining personal liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff and she is to hold the defendant harmless therefrom. The CT Page 6544 plaintiff's financial affidavit also lists the number of liabilities that are shown as personal guarantees on business loans. The loan to American Honda Finance, shown as having a balance of $2255.35, is to remain the liability of the plaintiff. All of the remaining personal guarantees by her regarding business loans are ordered to be paid jointly by the parties, with each party being liable for one-half and is to hold the other party harmless for such one-half. It is the intent of this order that no third party beneficiary rights be created from this order.
5. The court orders that in the event there is any surplus from the foreclosure of the family residence, that the surplus be divided equally between the parties. In the event there is any deficiency, then each party is to be responsible for one-half of such deficiency and hold the other party harmless for such one-half.
6. The court awards to the plaintiff the Village bank account in the amount of $250, and her seventeen shares in Village Bank with a value of $382.50.
7. The court orders that the defendant be solely responsible for the lease on the 1995 Caravan shown on his financial affidavit, dated February 6, 1997, and that he hold the plaintiff harmless therefrom.
8. The court orders that the Fleet Bank and the State Police Credit Union checking account, referred to on the defendant's financial affidavit, is assigned solely to the defendant.
9. The court orders that the defendant pay the creditors shown on his financial affidavit, except for the Fleet Bank liability, and that he hold the plaintiff harmless therefrom. No third party beneficiary rights are intended to be created by this order.
10. The plaintiff's diamond engagement ring and all of the Mary Kaye products are awarded to the plaintiff.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
CT Page 6545
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
Axelrod, J.